FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 18, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHARLES TAMBURELLO, husband, and ROXANNE TAMBURELLO, wife,

                     Plaintiffs,

     v.

CITY OF KENNEWICK, a municipal corporation; JASON HARRINGTON, husband; and ROBIN HARRINGTON, wife,

                     Defendants.

NO: 4:17-CV-5119-RMP

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are Plaintiffs' Motion for Summary Judgment, ECF No. 9, and Defendants' Cross-Motion for Summary Judgment, ECF No. 11. The Court held a hearing on May 10, 2018. David Hevel appeared on behalf of Plaintiffs. Joel Comfort appeared on behalf of Defendants. The Court has heard the parties' arguments, has reviewed the pleadings, and is fully informed.

/ / /

/ / /

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

Plaintiffs Charles and Roxanne Tamburello ("Plaintiffs") brought this suit against Defendants Jason and Robin Harrington and the City of Kennewick (collectively, "Defendants") alleging that Defendant Officer Jason Harrington violated Plaintiff Charles Tamburello's constitutional right to liberty, that Defendants committed the tortious acts of assault, battery, false arrest, and malicious prosecution against Mr. Tamburello, and that Defendants are liable for Plaintiffs' alleged injuries. *See* ECF No. 1-1 at 3; ECF No. 9 at 1; ECF No. 29. At the time of the events leading Plaintiffs to commence this action, Officer Harrington was employed by the City of Kennewick as a police officer. ECF No. 1-1, ¶ 2; ECF No. 4 at 2.

While on duty on the morning of August 28, 2015, Officer Harrington responded to a dispatch call that he described as an open 911 line "disturbance call" with male and female voices and no one answering questions.[1] ECF No. 10, ¶9. At oral argument, Defendants asserted that Officer Harrington did not have the names of any individuals at the location and had never seen the defendants before appearing at the dispatch location.

---

[1] The dispatch call also informed Officer Harrington that the location had a previous call history involving a male and female, where a suicidal male had threatened suicide with a gun. ECF No. 12, ¶ 2. However, Officer Harrington does not appear to rely on that information in his assessment of the situation, based on his deposition testimony. ECF No. 10-1 at 43.

When he arrived at the dispatch location, Officer Harrington observed three individuals in the entryway of an apartment. ECF No. 10, ¶ 13. He observed two women and one man. *Id.*, ¶ 15. The individuals were speaking in raised voices and flailing their arms. ECF No. 10-1 at 12-13; ECF No. 25 at 5-6. According to Officer Harrington, the individuals were screaming angrily and were engaged in what appeared to be pushing and shoving. ECF No. 10, ¶ 13.

Officer Harrington identified himself and requested that the man, later identified as Charles Tamburello, come talk to him. *Id.*, ¶¶ 15, 21. Officer Harrington then observed Mr. Tamburello appear to physically push one of the women aside as Mr. Tamburello walked away from the entryway and away from Officer Harrington. *Id.*, ¶¶ 15, 24. Officer Harrington again directed Mr. Tamburello to come and talk with him. *Id.*, ¶ 28. During these communications, Officer Harrington heard one of the women, Melissa Quandt, say that Mr. Tamburello was her father. *Id.*, ¶ 30.

When Mr. Tamburello did not stop, Officer Harrington again directed Mr. Tamburello to stop, told Mr. Tamburello that he was being detained, and ordered him to sit down on the ground. *Id.*, ¶¶ 28, 31. Mr. Tamburello did not sit down, and instead turned toward Officer Harrington with his hands positioned out of Officer Harrington's view in such a way that Officer Harrington became concerned that Mr. Tamburello had a gun. *Id.*, ¶ 32. In response, Officer Harrington pulled his gun halfway out of his holster and told Mr. Tamburello to show his hands. *Id.*,

¶ 33. Mr. Tamburello complied by raising his hands. *Id.* Mr. Tamburello then began to walk towards Officer Harrington. *Id.*, ¶ 36. Officer Harrington reholstered his gun, ordered Mr. Tamburello to stop and to get to the ground, drew his taser, and aimed it at Mr. Tamburello's abdomen. *Id.*, ¶ 36. In response, Mr. Tamburello turned and began to walk away from Officer Harrington, at which point Officer Harrington approached Mr. Tamburello and took him to the ground. *Id.*, ¶¶ 37-38. Officer Harrington and Mr. Tamburello wrestled on the ground as Officer Harrington attempted to handcuff Mr. Tamburello, informing Mr. Tamburello that he was under arrest and ordering Mr. Tamburello to stop resisting. *Id.*, ¶¶ 39, 41; ECF No. 12, ¶¶ 27-28. Officer Harrington arrested Mr. Tamburello for resisting arrest and obstructing a public servant. ECF No. 10-1 at 45. At his trial on these charges, Mr. Tamburello was found not guilty. ECF No. 10, ¶ 7.

Plaintiffs allege that Defendants violated Mr. Tamburello's constitutional rights when Officer Harrington stopped and arrested Mr. Tamburello, resulting in the prosecution of Mr. Tamburello. ECF No. 1-1 at 2-3; ECF No. 29 at 2. Plaintiffs also allege that Officer Harrington's actions constituted tortious conduct causing harm to Plaintiffs. ECF No. 1-1 at 2-3; ECF No. 29 at 2. Plaintiffs further allege that the City of Kennewick violated Mr. Tamburello's constitutional rights by instituting an allegedly malicious prosecution of Mr. Tamburello, and that this prosecution caused harm to Plaintiffs. ECF No. 29 at 3-4. Plaintiffs and Defendants filed cross-motions for summary judgment.

This Court has federal question jurisdiction over Plaintiffs' constitutional and 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331 as a civil action arising under the laws of the United States. The Court has supplemental jurisdiction over Plaintiffs' Washington State law claims pursuant to 28 U.S.C. § 1367.

## DISCUSSION

### *Legal Standard for Summary Judgment*

A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "A key purpose of summary judgment 'is to isolate and dispose of factually unsupported claims.'" *Id.* (citing *Celotex*, 477 U.S at 324).

The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's prima facie case. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324. The nonmoving party "may not rest on mere allegations, but must

by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted).

When parties file cross-motions for summary judgment, the Court considers each motion on its own merits. *See Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment "does not vitiate the court's responsibility to determine whether disputed issues of material fact are present." *Id.*

### Legal Standard for Liability Under 42 U.S.C. § 1983

Plaintiffs argue that the City of Kennewick is liable under § 1983 for Officer Harrington's conduct and for the alleged malicious prosecution of Mr. Tamburello. *See* ECF No. 9; ECF No. 29 at 3; ECF No. 32 at 9. Defendants contend that Plaintiffs fail to show that the City of Kennewick satisfies the requirements established by *Monell v. Department of Social Servs.*, 436 U.S. 658 (1977). *See* ECF No. 11 at 13-15. Plaintiffs also argue that Officer Harrington is liable under § 1983 for Officer Harrington's allegedly unlawful Terry Stop, alleged false arrest, alleged assault and battery, and alleged malicious prosecution of Mr. Tamburello. *See* ECF No. 15. Defendants assert that the defense of qualified immunity is available to Officer Harrington, and contend that even if qualified immunity does not apply, Plaintiffs have not demonstrated evidence supporting the prima facie case of each of their § 1983 claims against Officer Harrington. *See* ECF No. 11.

To satisfy the legal standard required by 42 U.S.C. § 1983, a plaintiff must prove that two essential elements are present in his or her claim. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). First, the conduct complained of must be "committed by a person acting under color of state law." *Id.* Second, the plaintiff must show that the conduct complained of deprived the plaintiff of some right, privilege, or immunity secured by the Constitution or federal statutory law. *See id.*

Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 106 S. Ct. 662, 664 (1986). In a § 1983 suit, "the plaintiff must still prove a violation of the underlying constitutional right." *Id.* To establish liability pursuant to § 1983, a plaintiff must set forth facts demonstrating how each defendant caused or personally participated in causing a deprivation of the plaintiff's protected rights. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Although Plaintiffs alleged that Officer Harrington and his wife were liable under § 1983, *see* ECF No. 9, at oral argument, Plaintiffs conceded that there is no liability for Defendant Robin Harrington under § 1983. Therefore, the Court grants Defendants' Motion for Summary Judgment with regards to Plaintiffs' § 1983 claims against Defendant Robin Harrington and dismisses with prejudice Plaintiffs' § 1983 claims against Defendant Robin Harrington.

***Liability of the City of Kennewick Under 42 U.S.C. § 1983***

Municipalities cannot be held liable under § 1983 under a *respondeat superior* theory. *See Monell v. Department of Social Servs.*, 436 U.S. 658 (1977). Rather, a municipal entity may be liable if it had an official policy or longstanding practice or custom that caused an injury to be inflicted on the plaintiff. *Id.* at 694; *see also Hunter v. County of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011) (municipal liability may be shown through "evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished"). Alternatively, a municipality may be held liable for failing to adequately supervise the employees in question or for ratifying, after-the-fact, their actions. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (ratification occurs when "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it"). Finally, municipal liability may be based on a failure to train, if the plaintiff is able to show that

> (1) he was deprived of a constitutional right, (2) the [governmental entity] had a training policy that amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its officers] are likely to come into contact, and (3) his constitutional injury would have been avoided had the [entity] properly trained those officers.

*Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (internal quotations omitted).

Plaintiffs argue that the City of Kennewick is liable under § 1983 on two grounds. First, Plaintiffs argue that the City of Kennewick maintains policies that

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 8

incentivized Officer Harrington to make arrests, effectively ratifying Officer Harrington's actions. ECF No. 32 at 9. Plaintiffs support this argument with evidence that the Kennewick Police Department keeps records of officer performance and assert that Officer Harrington's employment was not negatively affected when Mr. Tamburello was found not guilty. *See* ECF No. 30 at 25-27; ECF No. 31, ¶¶ 2-5. Defendants contend that there is nothing unconstitutional about a police department's maintaining statistics about arrests. ECF No. 34 at 5. In addition, Defendants argue that Plaintiffs have not supported their contention that keeping statistics in any way serves as an incentive for officers to make arrests. The Court agrees. It finds that Plaintiffs' evidence of Kennewick Police Department's officer performance records is not sufficient to satisfy the requirements established by *Monell* to invoke liability on the City of Kennewick. *See Monell*, 436 U.S. 658.

Second, Plaintiffs argue that the City of Kennewick engaged in the malicious prosecution of Mr. Tamburello and that this alleged malicious prosecution is subject to § 1983 liability. ECF No. 9 at 13-15. Plaintiffs argue that an unnamed City of Kennewick official with "policy-making authority" ratified Officer Harrington's allegedly unconstitutional conduct. ECF No. 29 at 3. However, the Court finds that Plaintiffs have not provided any support for this claim beyond the arguments they present regarding Officer Harrington's allegedly unlawful actions.

Therefore, the Court finds that Plaintiffs have failed to establish any liability for the City of Kennewick under § 1983. The Court grants Defendants' Motion for

Summary Judgment with regards to Plaintiffs' § 1983 claims against Defendant City of Kennewick and dismisses with prejudice Plaintiffs' § 1983 claims against Defendant City of Kennewick.

**_Liability of Officer Harrington Under 42 U.S.C. § 1983_**

Plaintiffs argue that Officer Harrington is liable under § 1983 because he was acting under color of state law and his actions deprived Mr. Tamburello of Mr. Tamburello's personal liberty. ECF No. 9 at 16-19. Defendants assert that Officer Harrington is entitled to qualified immunity and contend that Plaintiffs have not defeated that immunity. ECF No. 11 at 10-13. Defendants also contend that, even if Officer Harrington's conduct was not protected by qualified immunity, Plaintiffs have not demonstrated evidence supporting the prima facie case of each of their claims against Officer Harrington. *Id.* at 19-20.

Qualified immunity entitles a law enforcement officer "not to stand trial or face the other burdens of litigation" on a § 1983 claim, provided the officer's conduct did not violate "clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). When assessing a challenge to qualified immunity, the court must consider two questions. First: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), abrogated by *Pearson v. Callahan*, 129 S. Ct. 808 (2009). "If no constitutional right would have been violated were the allegations established, there is no necessity for further

inquiries concerning qualified immunity." *Id.* Second: Was the right at issue "clearly established" such that it would have been clear to every reasonable officer that his conduct was unlawful in that situation? *Id.* at 201-02; *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). The Court may exercise its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818.

A right is clearly established if the contours of the right are sufficiently clear that every reasonable officer would understand that what he is doing violates that right. *Ashcroft*, 131 S. Ct. at 2083. Although the court does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "'[C]learly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017). The clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* at 639.

The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

> [E]ven if the violated right was clearly established, [the Supreme Court] recognized that it may be difficult for a police officer fully to appreciate how the legal constraints apply to the specific situation he or she faces. Under such a circumstance, "if the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense."

*Blankenhorn v. City of Orange,* 485 F.3d 463, 471 (9th Cir. 2007) (quoting *Motley v. Parks,* 432 F.3d 1072, 1077 (9th Cir. 2005) (en banc), *overruled in part on other grounds by United States v. King,* 687 F.3d 1189 (9th Cir. 2012) (en banc)).  The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful.  *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 916-17 (9th Cir. 1996).

### *Plaintiffs' Fourth Amendment Claim: Adequacy of Terry Stop*

Plaintiffs argue that Officer Harrington's investigative stop on August 28, 2015, was unconstitutional and that Officer Harrington knowingly violated a clearly established law.  ECF No. 9 at 3-4; ECF No. 32.  Defendants contend that Officer Harrington stopped Mr. Tamburello based upon a reasonable suspicion that a criminal act had been committed.  ECF No. 11 at 4-5.

The Fourth Amendment protects individuals from unreasonable search and seizure.  U.S. Const. amend. IV.  In *Terry v. Ohio*, the United States Supreme Court recognized that "a police officer may in appropriate circumstances and in an

appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. 1, 22 (1968).

A police officer may make a constitutionally permissible investigatory *Terry* stop based upon a "reasonable suspicion." *See, e.g., United States v. Palos-Marquez*, 591 F.3d 1272, 1274-75 (9th Cir. 2010). The level of suspicion required for a *Terry* stop is "considerably less than proof of wrongdoing by a preponderance of the evidence" and "obviously less demanding than that for probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The determination of whether reasonable suspicion exists is based upon the "totality of circumstances." *United States v. Santamaria-Hernandez*, 968 F.2d 980, 983 (9th Cir. 1992).

Here, the evidence demonstrates that Officer Harrington had been called to the scene in response to an open-line 911 call, in which unidentified male and female voices could be heard arguing. In addition, dispatch had informed Officer Harrington that there had been a previous incident at the location involving a woman and a man, where the man was threatening to commit suicide with a gun. ECF No. 13 at 16. When Officer Harrington arrived at the scene, he observed a man and two women who appeared to be arguing, which matched the description of individuals involved in the 911 call. At the scene, Officer Harrington saw the man physically push one of the women, and he learned that the man was the father of the woman whom Officer Harrington believed had been pushed. Officer

Harrington identified himself as a police officer and directed the man, Charles

Tamburello, to come talk with him. Officer Harrington's asserted purpose for

stopping Mr. Tamburello was to investigate the disturbance that Officer Harrington

had witnessed, in addition to the information that he had received from the 911

dispatcher call, and the information he had received from Melissa Quandt that Mr.

Tamburello was her father. ECF No. 10-1 at 18-21. The information about the

relationship between Mr. Tamburello and his daughter led Officer Harrington to

believe that he may now be investigating a potential domestic violence assault. *Id.*

Considering the circumstances, the Court finds that Officer Harrington had

reasonable suspicion to conduct an investigatory stop based upon the information

that he had available to him and upon his observations at the scene of the incident.

*See Terry*, 392 U.S. at 22. Even if the Court found that Officer Harrington did not

have reasonable suspicion to make the investigative stop, which it does not, the

Court finds that Defendants have met the burden of showing that Officer Harrington

reasonably believed that his conduct of stopping Mr. Tamburello was lawful. *See*

*Sorrels*, 290 F.3d at 969. Therefore, the Court finds that Officer Harrington is

entitled to summary judgment and qualified immunity for Plaintiffs' § 1983 *Terry*

Stop claim.

**Standard for Establishing False Arrest Under § 1983**

Plaintiffs argue that Officer Harrington is liable for false arrest under § 1983

because he did not have probable cause for his arrest of Mr. Tamburello. ECF No.

9 at 8-10.  Defendants contend that Officer Harrington is entitled to qualified immunity, and, even if he is not covered by qualified immunity, that he had probable cause to arrest Mr. Tamburello on August 28, 2015, for obstructing a public servant and resisting arrest.  ECF No. 11 at 5-8.

Under Washington law, false arrest is the "unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority." *Bender v. Seattle*, 664 P.2d 492, 499 (Wash. 1983).  To prevail on a § 1983 claim for false arrest and imprisonment, a plaintiff must demonstrate that there was no probable cause to arrest him.  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

Plaintiffs argue that Officer Harrington did not have legal authority to arrest Mr. Tamburello because Officer Harrington lacked probable cause to arrest and because his initial investigative stop was unlawful.  ECF No. 9 at 8-10.  The Court has found Officer Harrington's investigative stop lawful, and, thus, once Mr. Tamburello failed to comply with Officer Harrington's commands to stop and get on the ground, the situation escalated into one where Officer Harrington had probable cause to arrest Mr. Tamburello for  obstructing a public servant and, subsequently, resisting arrest.  *See* ECF No. 10-1 at 45.  Even if the Court found that Officer Harrington lacked probable cause to arrest Mr. Tamburello for obstructing a public servant and resisting arrest, which it does not, the Court finds that Defendants have met the burden of showing that Officer Harrington

reasonably believed that his conduct of arresting Mr. Tamburello for obstructing a public servant and resisting arrest was lawful.  *See Sorrels*, 290 F.3d at 969.  Therefore, the Court finds that Officer Harrington is entitled to summary judgment and qualified immunity for Plaintiffs' § 1983 false arrest claim.

**Standard for Establishing Assault and Battery Under § 1983**

Plaintiffs argue that Officer Harrington is liable for assault and battery, which they also characterize as excessive force, under § 1983.  ECF No. 9 at 6-8; ECF No. 32 at 8.  Defendants contend that because the *Terry* stop was lawful and Officer Harrington had probable cause for his arrest, Officer Harrington is entitled to qualified immunity, and, even if he is not entitled to qualified immunity, Defendants argue that Plaintiffs have failed to prove that Officer Harrington's use of force on August 28, 2015, was unlawful.  *See* ECF No. 11 at 8.

Under Washington law, an assault is "an attempt, with unlawful force, to inflict bodily injuries upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented." *Brower v. Ackerley*, 943 P.2d 1141, 1144 (Wash. App. Ct. 1997).  Plaintiffs argue that Officer Harrington's use of force was unlawful because, Plaintiffs argue, the *Terry* stop and arrest were unlawful.  ECF No. 9.  However, the Court finds that Officer Harrington's investigative stop and subsequent arrest of Mr. Tamburello were lawful, and, therefore, that Plaintiffs have not established that Officer Harrington committed an assault against Mr. Tamburello by using unlawful force.

Under Washington law, a *prima facie* case for battery consists of the following elements: (1) "the act is done with the intention of bringing about a harmful or offensive contact or an apprehension thereof to the other or a third person;" (2) "the contact is not consented to by the other or the other's consent thereto is procured by fraud or duress;" and (3) "the contact is not otherwise privileged." *See Garratt v. Dailey*, 279 P.2d 1091, 1093 (1955). As with their assault allegation, Plaintiffs argue that Officer Harrington's use of force was unlawful because, Plaintiffs argue, the *Terry* stop and arrest were unlawful. ECF No. 9. Defendants contend that Officer Harrington's use of force was privileged because he acted lawfully in stopping and seizing Mr. Tamburello. ECF No. 11 at 8. As discussed previously, the Court agrees.

The Court has found Officer Harrington's investigative stop and subsequent arrest of Mr. Tamburello lawful, and, thus, the Court finds that Plaintiffs have failed to demonstrate that Officer Harrington's use of force was unlawful. Even if the Court found that Officer Harrington's use of force was unlawful, which it does not, the Court finds that Defendants have met the burden of showing that Officer Harrington reasonably believed that his conduct was lawful, given the circumstances of the August 28, 2015, incident. *See Sorrels*, 290 F.3d at 969. Therefore, the Court finds that Officer Harrington is entitled to summary judgment and qualified immunity for Plaintiffs' § 1983 assault and battery claim.

**Standard for Establishing Malicious Prosecution Under § 1983**

Plaintiffs argue that Officer Harrington maliciously prosecuted Mr. Tamburello.  ECF No. 9 at 15-17.  Defendants contend that Officer Harrington is entitled to qualified immunity, and that Plaintiffs have not satisfied the prima facie elements for establishing malicious prosecution.  ECF No. 11 at 8-12.

In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."  *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir.1995).  Under Washington law, a plaintiff alleging malicious prosecution must prove

> 1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) *that there was want of probable cause for the institution or continuation of the prosecution*; (3) *that the proceedings were instituted or continued through malice*; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Peterson v. Littlejohn*, 781 P.2d 1329, 1333 (Wash. 1989) (quoting *Mike v. Tharp*, 583 P.2d 654 (1978)) (italics in original).  The Ninth Circuit has held that "probable cause is an absolute defense to malicious prosecution."  *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009).

Officer Harrington arrested and cited Mr. Tamburello for resisting arrest and obstructing a public servant.  ECF No. 10-1 at 45.  An Assistant City Attorney for

the City of Kennewick certified in the criminal complaint against Mr. Tamburello that she had reasonable grounds to believe Mr. Tamburello committed the charged offenses. ECF No. 10-1 at 47. At his trial on these charges, Mr. Tamburello was found not guilty. ECF No. 10, ¶ 7. Plaintiffs present no evidence that Officer Harrington exerted influence on the prosecutor who brought the charges against Mr. Tamburello. Plaintiffs assert without support that Officer Harrington "caused the prosecution by submitting a false report and a false citation to the Kennewick City Attorney." ECF No. 32 at 6.

The Court will not infer evidence that does not exist in the record. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (court will not presume missing facts). Because the Court finds that Defendants have demonstrated that probable cause existed for the arrest and citation of Mr. Tamburello, and Plaintiffs present no evidence of malice, the Court finds that Plaintiffs have failed to satisfy their prima facie case for malicious prosecution. Even if the Court found that Officer Harrington maliciously prosecuted Mr. Tamburello, which it does not, the Court finds that Defendants have met their burden of showing that Officer Harrington reasonably believed that his conduct was lawful, given the circumstances of the August 28, 2015, incident. *See Sorrels*, 290 F.3d at 969. Therefore, the Court finds that Officer Harrington is entitled to summary judgment and qualified immunity for Plaintiffs' § 1983 malicious prosecution claim.

The Court grants Defendants' Motion for Summary Judgment with regards to Plaintiffs' § 1983 claims against Officer Harrington and dismisses with prejudice Plaintiffs' § 1983 claims against Officer Harrington.

**State Tort Claims**

In addition to Plaintiffs' § 1983 claims, Plaintiffs argue that Defendants are liable under Washington state common law tort for false arrest, assault and battery, and malicious prosecution. ECF No. 9 at 6. At oral argument, Defendants contended that the Court should dismiss all state law tort claims based on qualified immunity under state law.

As discussed above, the Court has considered the prima facie elements of each of Plaintiffs' alleged torts in the Court's analysis of Plaintiffs' § 1983 claims, and the Court finds that Plaintiffs have failed to establish the prima facie elements for their claims of false arrest, assault and battery, and malicious prosecution. *See supra.* Therefore, the Court grants Defendants' Motion for Summary Judgment with regards to Plaintiffs' Washington state tort claims against Defendants, and the Court dismisses with prejudice Plaintiffs' Washington state tort claims against Defendants.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Summary Judgment, **ECF No. 9**, is **DENIED**.

2. Defendants' Cross-Motion for Summary Judgment, **ECF No. 11**, is

    **GRANTED**, and Judgment shall be entered in favor of Defendants.

3. Plaintiffs' claims against Defendants are **DISMISSED with prejudice**.

The District Court Clerk is directed to enter this Order, enter Judgment as outlined, provide copies to counsel, and **close this case**.

**DATED** May 18, 2018.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge